IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LELCHOOK, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 16-01550 (RC) |
| | ) |
| SYRIAN ARAB REPUBLIC | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT AS TO LIABILITY**

COME NOW the Plaintiffs, by and through their undersigned counsel, and respectfully request the Court to enter Default Judgment as to Liability on behalf of the Plaintiffs, Alexander Lelchook, Ester Lelchook on behalf of Estate of David Martin Lelchook, Michal Lelchook, Yael Lelchook, and Doris Lelchook (hereafter collectively "Plaintiffs") commensurate with the liability evidence presented herein pursuant to the private cause of action found in 28 U.S.C. § 1605A(c).

**BACKGROUND AND PROCEDURAL HISTORY**

On September 20, 2017, the Clerk of Court entered default against the Syrian Arab Republic ("hereinafter SYRIA"), after SYRIA failed to Answer or otherwise plead to the Complaint. In the Complaint, the Plaintiffs have alleged that this action arises out of the personal injury and wrongful death of David Lelchook who died in a terrorist rocket attack that occurred on August 2, 2006, while riding his bicycle at Kibbutz Sa-ar, located in the State of Israel. The rocket attack was carried out by a Foreign Terrorist Organization, Hezbollah, so

1

designated by the U.S. Department of State, operating with the material support of, and resources provided by, Syria as a designated State Sponsor of Terrorism, having been so designated by the U.S. Department of State in 1979 and having remained so designated at all times referenced herein.  The terrorists committed, and David Lelchook was the victim of, acts of "torture" and "extrajudicial killing" as defined in the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, and "personal injury" and "death" as required by 28 U.S.C. § 1605A.  The Plaintiffs assert causes of action for extrajudicial killing, wrongful death, intentional infliction of emotional distress and solatium under 28 U.S.C. § 1605A.   As shown below, Plaintiffs have submitted evidence and have demonstrated to the Court that in accordance with 28 U.S.C. § 1608(e), Plaintiffs are entitled to entry of judgment as to liability and to recover damages pursuant to applicable law.

**I.   Syria is Liable to Plaintiffs under the FSIA**.

A.  Plaintiffs Have Met Their Burden of Proof

28 U.S.C. § 1608(e) provides that "no judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  To satisfy this burden, plaintiffs must present evidence concerning their backgrounds and injuries suffered, and also that the Court take judicial notice of prior findings of fact and evidence.  *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 6-7 (D.D.C. 2011).  This allows courts to "rely upon the evidence presented in earlier litigation ... without necessitating the formality of having that evidence reproduced." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 55 (D.D.C. 2010).  28 U.S.C. § 1608(e) does not require any more evidence or higher standard of evidence than the Court would ordinarily receive to

render a judgment. *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 242 (2d Cir. 1994). Although the exact standard for what a plaintiff must show in the default judgment context to provide evidence "satisfactory to the court" under section 1608(e) is somewhat uncertain, courts have found that a plaintiff need only introduce sufficient evidence "to allow an issue to go to a jury ... a burden akin to the requirement of 'substantial evidence' in administrative law.' " Flanagan v. Islamic Republic of Iran, 190 F. Supp. 3d 138, 173 (D.D.C. 2016) *quoting Owens*, 174 F.Supp.3d at 276, 2016 WL 1170919, at *25.

To evaluate the plaintiffs' proof the Court can "accept as true the plaintiffs' uncontroverted evidence." *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 510 F. Supp. 2d 101, 103 (D.D.C. 2007). Plaintiffs' may also rely on the statements and opinions of experts to establish liability, even if their expert opinions rely on hearsay. *Flanagan,* 190 F. Supp. 3d at 173 (D.D.C. 2016). Indeed, in the terrorism context, experts' reliance on hearsay evidence is often critical. *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir.2005) (quoting the district court which had concluded that, "[g]iven the secretive nature of terrorists, the Court can think of few [non-hearsay] materials that experts in the field of terrorism would rely upon"). Terrorist activity is typically covert, and when creating the terrorism exception to sovereign immunity Congress recognized that state sponsors of terrorism "have become better at hiding their material support for their surrogates, which includes the provision of safe havens, funding, training, supplying weaponry, medical assistance, false travel documentation, and the like." *Flanagan*, 190 F. Supp. 3d 138, 173 (D.D.C. 2016) citing H.R. Rep. No. 104-383, at 62 (1995). This is because the types of records or direct evidence available in civil litigation are unlikely to be available in default FSIA cases—particularly when, as here, Plaintiffs have no access to discovery. *See Id*.; *See also Owens*, 174 F.Supp.3d at 276–80, 2016 WL 1170919, at *26–28

3

(collecting cases discussing the use of expert testimony and hearsay in FSIA cases). In fact, the D.C. Circuit has noted, that "courts have the authority—indeed, we think, the obligation—to 'adjust [evidentiary requirements] to ... differing situations.' " *Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C.Cir.2014) (alteration and ellipses in original) (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981)); *see also Flanagan*, 190 F. Supp. 3d at 175(positing that if courts were "to demand more of plaintiffs ... few suits like this could ever proceed, and state sponsors of terrorism could effectively immunize themselves by killing their victims, intimidating witnesses, and refusing to appear in court").

Moreover, the plaintiffs may establish their proof by declaration. *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002). Accordingly, Plaintiffs submit the sworn Declarations of Expert David Schenker and Expert Ovadia Gabbay in support of the Motion for Default Judgment as to Liability.

B.  <u>Service Has Been Made on Defendant Syria</u>

Defendant Syria has been served with process pursuant to the provisions of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608, and Fed. R. Civ. P. 4(j)(1), which directs that "service upon a foreign state or a political subdivision, agency or instrumentality thereof shall be effected pursuant to 28 U.S.C. § 1608." Plaintiffs effected service under 28 U.S.C. § 1608(a)(4) because none of the other methods of § 1608 of the FSIA are available in this case; to wit, no "special arrangement" exists with regard to any of the plaintiffs and the defendant, 28 U.S.C. § 1608(a)(1); no international convention has been ratified by the Syrian Arab Republic, 28 U.S.C. § 1608(a)(2); and the Defendant could not be served by mail, 28 U.S.C. § 1608(a)(3).

On December 21, 2016, Plaintiffs requested that the Clerk of Court serve "a copy of the Complaint, Summons, Notice of Related Action, Notice of Suit and administrative documents

from the Court, and translations thereof, upon the Defendant [sic] in this matter." Plaintiffs also requested that the Clerk of Court "send the relevant documents and translations (in this case Arabic translations) "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services"" so that the Secretary of State shall then take steps to effect service through diplomatic channels."   28 U.S.C. § 1608(a)(4); [Dkt #8.]   Plaintiffs provided the Clerk's office with packages containing said documents for the Syrian Defendant. The Clerk of Court certified on December 23, 2016 that the complete set of required documents had been mailed by certified mail to the appropriate address in accordance with the Plaintiffs' request.  [Dkt #10]

On September 13, 2017, the United States Department of State advised the Court by letter that on May 29, 2017 service of the Summons, Complaints and related documents on the Defendant was completed by diplomatic means. [Dkt #13] Accordingly, service was complete as of May 29, 2017 and the Syrian Defendant had until July 28, 2017 to Answer.  28 U.S.C. § 1608(c)(1).

C. This Court has Jurisdiction Over Syria Pursuant to the State Sponsored Terrorism Exception of the FSIA

The requirements for subject matter jurisdiction under 28 U.S.C. § 1605A allow Plaintiffs to seek money damages for personal injury or death if the damages were caused by:

1. the provision of "material support or resources"[1] for hostage taking, torture, and an extrajudicial killing;

---

[1] 28 U.S.C. § 1605A(h)(3) defines "material support or resources" as "the meaning given that term in section 2339A of title 18."   18 U.S.C. § 2339A(b) defines "material support or resources" as "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel."

2. if the provision of material support was engaged in by an official while acting within the scope of his office;

3. the defendant was a "state-sponsor of terrorism" at the time the act complained of occurred; and

4. the claimant or the victim was a "US national" at the time of the act of terrorism

28 U.S.C. § 1605A(a)(1), (a)(2).  As set forth below, the Court may assert subject matter jurisdiction over Syria under this statute.

Proof of the first two elements is inextricably intertwined with the evidence of Syria's liability as shown below.  In support of their Motion for Default Judgment as to Liability, Plaintiffs' present to the Court evidence that Syria provided material support and resources, including weapons, as defined by 18 U.S.C. § 2339A(b), to Hezbollah and its network of terrorists in Syria and the Middle East for hostage taking, torture, and extrajudicial killings on a scale such that the imposition of liability under 28 U.S.C. § 1605A(c) is required.  *See* Declaration of David Schenker attached hereto as Exhibit A, and incorporated herein by reference.  Proof of aiding and abetting necessarily proves that Syria provided material support or resources to Hezbollah and its terrorist network.

For the purposes of satisfying the requirements of 28 U.S.C. § 1605A(a)(1), Syria provided weapons to Hezbollah prior to and during the 33 day summer of 2006 terrorist attacks. *Schenker Decl.*, Ex. A, p. 3.  When a foreign sovereign provides weapons to a terrorist organization it meets the statutory definition of "material support" under 18 U.S.C. § 2339A(b).

Plaintiffs' have also presented the Court with compelling evidence that Syria by and through the Assad regime and individual members of the Assad regime acting within the scope of their offices, cooperated with and supported Hezbollah, as it proxy militia focused on fighting

Israel. *Schenker Decl.*, Ex. A. p, 3. As Mr. Schenker explains, "Hezbollah was (and remains) a natural ally of Damascus, in large part because since 1948, Syria has been at war with Israel. Not only does Hezbollah frequently attack Israel, the organization serves as a sort of buffer between Syria and Israel: based on the topography of the region, Damascus has long believed that an Israeli ground offensive against Syria would necessarily have to pass through Lebanon's Bekaa Valley, a Hezbollah stronghold…. [a]s such, since Hezbollah's establishment, Syria has served reliably as the primary conduit of the organization's military materiel." *Schenker Decl.*, Ex. A. p, 3. Thus, the first and second elements to allow the Court to assert subject matter jurisdiction are satisfied.

The third element required asks whether the defendant foreign sovereign was a "state-sponsor of terrorism" at the time the act complained of occurred. 28 U.S.C. § 1605A(a)(2)(A)(i)(I). The term "state-sponsor of terrorism" is defined by the statute at 28 U.S.C. § 1605A(h)(6):

> the term 'state sponsor of terrorism' means a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism . . . .

Syria has been designated as a state-sponsor of terrorism continuously since December 29, 1979[2] and Syria's continued designation as a state-sponsor of terrorism was noted on May 18, 2004, 69 Fed. Reg. 28,098, 28,100 (2004), and in 2005, as well as at other times. 31 C.F.R. § 596.201 (2005). Moreover, Syria remains on the State Department list of State Sponsors of Terrorism today. *Schenker Decl.*, Ex. A, p.3.

The fourth element required asks whether the victim or claimant was a U.S. national at the time of the act of terrorism. 28 U.S.C. § 1605A(a)(2)(A)(ii). 28 U.S.C. § 1605A(h)(5) defines a

---

[2] http://www.state.gov/s/ct/c14151.htm.

U.S. national as defined in 8 U.S.C. § 1101(a)(22), in part, as "a citizen of the United States." In this case, decedent David Lelchook was a U.S. citizen (and is represented herein by and through their heir of his estate and surviving spouse Esther Lelchook), thus the fourth element for asserting jurisdiction has been met. *See* Birth Certificate/Passport attached as Exhibit B. In addition, Alexander Lelchook, Michal Lelchook, Yael Lelchook, and Doris Lelchook are each United States citizens and entitled to bring their own individual causes of action pursuant to 28 U.S.C. 1605A(c) for their solatium, pain and suffering and punitive damages. *See* Birth Certificate/Passports of Michal Lelchook, Yael Lelchook attached as Exhibits C-D.[3]

D. <u>28 U.S.C. § 1605A(c) Provides a Private Cause of Action for Plaintiffs Who are American Citizens and Have Brought Claims against the Syrian Defendants for their Damages</u>

Section 1605A(c) provides a private right of action to recover damages for state-sponsored terrorism:

> (c) Private Right of Action-A foreign state that is or was a state sponsor of terrorism ... shall be liable to-(1) a national of the United States ... or (4) the legal representative of [such] a person, for personal injury or death caused by acts described in subsection (a)(1) [i.e., the provision of material support or resources for hostage taking, torture, or extrajudicial killing].... In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

28 U.S.C. § 1605A(c). Accordingly, Alexander Lelchook, the Estate of David Martin Lelchook, Michal Lelchook, Yael Lelchook, and Doris Lelchook, each of them U.S. citizens may recover for their damages pursuant to the private cause of action created.

With respect to the Estate of David Lelchook, the determination of whether an estate may maintain a cause of action for injuries suffered during the decedent's life is a question "governed by the law of the state which also governs the creation of the estate."

---

[3] Plaintiffs will be filing the Passports/birth Certificates of Alexander Lelchook and Doris Lelchook in a supplemental filing.

8

*Taylor v. Islamic Republic of Iran,* 811 F.Supp.2d 1, 12 (D.D.C.2011).  State law governs this issue because it is not related to the extent and nature of the claims, but instead involves a threshold question regarding the "power of the estate to bring and maintain legal claims." *Id.*

David Lelchook's estate exists under Israeli law. The Estate of David Lelchook's interests are represented by the heir of his estate, Ester Lelchook[4].  *See* Certificate of Inheritance of David Lelchook attached hereto as Exhibit E.  In the District of Columbia, a "foreign personal representative may exercise all of the powers of such office and may sue and be sued in the District of Columbia, subject to any statute or rule relating to nonresidents." D.C. Code § 20-342.  To explain and assist the Court in the interpretation and the relevance of Certificates of Inheritance in Israeli probate/estate matters, in accordance with Fed. R. Civ. P. 44.1, Plaintiffs have retained an Israeli legal expert[5], Ovadia Gabbay, an attorney licensed to practice law in the State of Israel, to provide to the Court a Declaration explaining the Certificate of Inheritance and its use under Israeli law to establish Esther Lelchook's standing to serve as David Lelchook's legal representative.  *See Declaration of Ovadia Gabbay* attached hereto as Exhibit F.

As Mr. Gabbay explains, because Esther Lelchook has been named as the legal heir of David Lelchook pursuant to a Certificate of Inheritance issued by the Registrar of Inheritance in Haifa, Israel, she is authorized to serve as decedent David Lelchook's personal representative in all matters including, but not limited to, the claims asserted in this case.  *Gabbay Decl.,*Exhibit F, ¶¶4, 11.  Similar to United States law, the Israeli legal system recognizes two distinct and independent causes of action when a victim of a civil wrong dies as a result of a tort committed

---

[4] Ester Lelchook, is before this Court in her capacity as the legal representative of David Lelchook. While not herself a United States national, because David Lelchook was a United States national, Ester Lelchook meets the requirement of 28 U.S.C. 1605A(c)(4).
[5] Mr. Gabbay's qualifications as a legal expert on this matter are set forth in his Declaration.

9

against her; a survival action pursuant to Section 19 of the Civil Wrongs Ordinance ("CWO") and a wrongful death action pursuant to Section 78 of the CWO, although as discussed below, Plaintiffs in this case are able to utilize a U.S. federal cause of action as the estate representatives of a decedent U.S. citizen. *Gabbay Decl.*, Exhibit F, ¶6. Both of these sections allow for the heirs or dependents of the decedent to pursue a claim on the decedent's behalf. *Id*. Therefore, under Israeli law in order to be able to represent the interests of such a decedent, and serve as the legal representative, heirs must obtain a Certificate of Inheritance which is issued by the Registrar of Inheritance. *Gabbay Decl.*, Exhibit F, ¶9. And, once obtained, serves as prima facie evidence of their standing to represent the interests of the decedent.

Here, the Registrar of Inheritance in Haifa, Israel issued said Certificate and named Esther Lelchook as David Lelchook's heir. *See* Ex. E. Therefore, pursuant to said Certificate she is entitled to bring claims as David Lelchook's legal representatives. *Gabbay Decl.*, Exhibit F, ¶11. Having been recognized by the Israeli Registrar of Inheritance as Mr. Lelchook's legal representative, pursuant to D.C. Code § 20-342, Esther Lelchook, may serve as the personal representative of David Lelchook and may sue in the District of Columbia on her behalf. Accordingly, this Court should properly recognize Esther Lelchook as David Lelchook's duly designated legal representative and award monetary damages to her in her representative capacity for David Lelchook's economic damages, pain and suffering and punitive damages. As the duly appointed estate representatives of a "national of the United States", the federal cause of action found at 28 U.S.C. §1605A(c) allows Esther Lelchook, as an estate representative to bring a lawsuit and to collect damages which "may include economic damages, solatium, pain and suffering, and punitive damages."

E. <u>The Syrian Defendants' Are Liable for the Rocket Attack Which Killed David Lelchook</u>

On August 2, 2006, David Lelchook was killed on Kibbutz Saar, some five miles south of the Lebanese border, when a Katyusha rocket, provided by Syria was launched by Hezbollah operatives. *Schenker Decl.*, Ex. A, p.8.  The Katyusha rocket was one of 300 missiles that Hezbollah fired into northern Israel in the geographic area of where David Lelchook was killed. *Id.*  No other forces other than Hezbollah were in Lebanon and were firing missiles or rockets into Israel during this period.  *Id.* Moreover, American and Iranian officials, as well as the leader of Hezbollah all openly admit that Syria served as the leading logistical hub for military materiel being provided to Hezbollah. *Id.* On October 8, 1997, Hezbollah was designated by the United States State Department as a Foreign Terrorist Organization ("FTO"). https://www.state.gov/j/ct/rls/other/des/123085.htm

Syria's sponsorship of Hezbollah is uncontroverted. As Mr. Schenker explains, Syria hosts, supports, and provides sanctuary to several terrorist organizations, but the terrorist organization with which Syria is most closely associated, since 2000, is Hezbollah. *Schenker Decl*, Ex. A., p.3.  In the year 2000, Bashar Assad took control of Syria.  *Id.*  Since that time, Syria has supported Hezbollah as a matter of policy.  *Id.*  Hezbollah was a natural ally of Syria and the Assad regime because of its willingness to attack Israel and act as a conduit for military material used to conduct attacks on the Jewish state.  *Id*. Moreover, Hezbollah controlled Lebanon's Bekaa Valley, and for Syria to effectively initiate attacks on the Israeli state, the topography of the region made it necessary for Syria move ground forces and weapons through the Hezbollah controlled territory.  *Id.*

Syria was also willing to be, and in fact was, a key source for providing weapons to Hezbollah to use as its arsenal.  *Id* at 4.  The Assad regime provided these weapons in two ways. First, Syria would transship Iranian weapons and ammunitions directly to Hezbollah.  The Syrian

regime receive Iranian weapons at the Damascus airport and re-exported them by loading the material on trucks and driving it over the border to Hezbollah militants located in Lebanon. *Id*. Secondly, The Assad regime was willing to provide weapons directly from its own stocks and provide them to Hezbollah. *Id.*

1. <u>Syria Provided the Weapon that Killed David Lelchook</u>

In particular, the Iranian weapons transiting Syria en route to Hezbollah in 2006 included up to 120 Iranian-supplied Fajr 3 and Fajr 5 rockets, with ranges of 22 miles and 45 miles, respectively, which it deployed during the rocket barrage during the summer of 2006. *Id*. at 5. It has been confirmed that among the missile strikes that occurred, the Fajr 5 was used during Hezbollah's July 28, 2006 strike on the Israeli town of Afula. *Id.* In addition, to the rockets that were fired at land targets, Hezbollah also used Iranian C802 anti-ship missiles, including one used on July 14, 2006. *Id.* Moreover it is believed that Hezbollah possessed thousands of Katyusha (122mm) rockets. *Id*. at 6. During the hostilities, more than 3,500 of these rockets were fired into Israel. *Id.* According to Israeli intelligence officials, it was one of these Katyusha missiles that killed David Lelchook on Kibbutz Saar on August 2, 2006. *Id.*

2. <u>The Supply of Weaponry to Hezbollah by Syria Has Been Confirmed by the United States Government</u>

In the 2005 congressionally-mandated annual report on terrorism, Country Reports on Terrorism, the U.S. State Department noted that, "the Syria Government has continued to provide political and material support to Hizballah". *Country Reports on Terrorism*, US Department of State, 2005. https://www.state.gov/j/ct/rls/crt/c17689.htm.

The Syrian supply chain of weaponry to Hezbollah has been acknowledged and confirmed by successive U.S. Administrations. After the start of the 2006 missile attacks, one of which murdered David Lelchook, President George W. Bush, discussed Syria's role in arming

Hezbollah. In his July 22, 2006 address, just two weeks before David Lelchook's murder, President Bush stated, "for many years, Syria has been a primary sponsor of Hezbollah and it is has helped provide Hezbollah with shipments of Iranian made weapons." *Id.* Not only was the President clear in describing the Syrian government's role in supporting Hezbollah, but the U.S. Department of State, the National Security Council and the United States Congress all confirmed that by arming Hezbollah, Syria was accountable for the rocket attacks which rained down on Israel in the summer of 2006 from July 12-August 14. *Id* at 3-4.

Beyond the U.S. officials, Hezbollah itself admitted that Damascus played a role in providing the armaments it used during the 2006 summer terror attacks. In August 2014, a senior Hezbollah leader, Hassan Nasrallah, admitted that Hezbollah received its arms from Syria. *Id* at 5. During an interview posted on Hezbollah's own website, Nasrallah stated, "During the [2006] war, the transfer of arms from Syria did not stop. It was not clear how long the war would last, so the more weapons and ammunition we had, the better the situation would be....". *Id.*

Accordingly, based on the evidence submitted above, and Mr. Schenker's expert testimony submitted to the Court, this Court should conclude that (1) Syria was the key logistical node for the transfer of weapons to Hezbollah in Lebanon; (2) since Hezbollah's establishment by Iran in the early 1980s, Syria has served as a key point of transshipment of Iranian weapons and military material to the terrorist organization; (3) Syria under the Bashar Assad regime has itself emerged as a leading source of weapons to Hezbollah; (4) through transshipment of Iranian missiles and the direct shipment of rockets from its own stocks, Syria's Bashar Assad regime was responsible for establishing Hezbollah's arsenal of rockets and missiles; (5) thousands of missiles and rockets provided by Iran via Syria and by Syria from its own stocks to

Hezbollah were fired into Israel during the summer 2006; (6) senior Hezbollah officials, including Hezbollah leader Hassan Nasrallah, admitted that Syria exported weapons to the organization before and during the summer 2006 war; (7) based on the range of the projectile and on information provided by Israeli officials, it is all but certain that a shorter-range Katyusha rocket, also known as the 122mm Grad rocket, with a range of 20 kms., hit Kibbutz Saar on August 2, 2006, killing David Lelchook, a US national; and accordingly that (8) Hezbollah fired the rocket that killed David Lelchook on August 2, 2006 and that this rocket was provided to Hezbollah, an FTO, by Syria.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Plaintiffs accordingly request that the Court enter default judgment against Syria, on behalf of each and all of the Plaintiffs, finding that Syria's material support for Hezbollah proximately caused the acts of terrorism that resulted in David Lelchook's murder.  Plaintiffs further request that upon finding Syria liable, this Court permit the Plaintiffs to submit evidence so that the Court may assess the individual Plaintiffs' damages and enter final judgment as to their damages.

Dated: December 15, 2017

Respectfully submitted,

HEIDEMAN NUDELMAN
& KALIK, P.C.
1146 19th Street, N.W., 5th Floor
Washington, DC 20036
Telephone:  202-463-1818
Telefax:  202-463-2999

By: _/s/Richard D. Heideman_____
     _/s/ Tracy Reichman Kalik_____
  Richard D. Heideman (No. 377462)
  Noel J. Nudelman (No. 449969)
  Tracy Reichman Kalik (No. 462055)